YORK ICE MACHINERY CORPORATION *v.* GRIFFITH.

No. 8648.   August 15, 1932.

*Maddox, Matthews & Owens* and *James T. Wright,* for plaintiff in error.

*Wright & Covington,* contra.

BECK, P. J. (After stating the foregoing facts.)

■ The motion for a new trial contains the usual general grounds. An amendment to the motion contains additional grounds. Several of them assign error upon portions of the court's instructions to the jury; and one assigns error on the court's failure to charge the jury on the question of the extent of the liability of the defendant in the event it was found from the evidence that there were any defects or deficient parts in the machinery which caused or tended to cause the plant to produce less than the quantity of ice specified in the guaranties, and particularly for failing to instruct the jury that, in the event defects or deficiencies were found to exist, the liability of the defendant would be limited, under the terms of the contract, to repairing such defects or deficiencies, or the expense of repairing them. Upon examination of the charges excepted to, the court is of the opinion that they sufficiently stated the issues dealt with, and were not erroneous for any of the reasons assigned.

■ The last ground of the motion for a new trial is as follows: "That on the trial of said case, and before the jury retired to consider of their verdict, and before the trial judge began charging said jury in said case, counsel for the defendant, in writing, requested the trial judge to instruct the jury as follows: 'If you find that Mr. Griffith signed the letter of November 6th, 1928, accepting the ice plant, then I charge you that under the pleadings and evidence in this case you need go no further in your consideration of the case, but should find for the defendant in the amount claimed on the notes,—that amount being $2,378.80 with interest thereon at 6 per cent. from June 6th, 1928, the date of the notes;' and also before the jury retired to consider of their verdict, and

before the trial judge began his instructions to the jury, counsel for the defendant, in writing, requested the trial judge to instruct the jury as follows, to wit: 'The defendant claims that the plaintiff, Mr. Griffith, accepted the ice plant installed by it under the contract, and in support of that claim has introduced in evidence a certain letter addressed to the defendant company, which Mr. Griffith denies that he signed. You will consider all of the evidence bearing on the question of whether or not Mr. Griffith signed this letter. If you find that he did sign it, then I charge you that the effect thereof would be an acceptance of the ice plant, and that the contract would be an executed one, and that under the law he could not maintain an action to rescind the contract, and, his suit being one to rescind the contract, that your verdict should be for the defendant.' The trial judge failed and refused to charge the jury either of said written requests to charge as hereinabove quoted, and did not elsewhere in his charge instruct the jury on the matters or questions involved in said requested charges. To the judgment of the court, in failing and refusing to give in charge the said requested charge so submitted in writing to the trial judge, movant excepts and assigns error thereon and says that the court erred in so failing and refusing to give said charges as requested in writing, on the grounds: (a) That the same were applicable and pertinent under the pleadings and evidence in said case, and submitted clearly and concretely the defense set up by the defendant, to the effect that the plaintiff had accepted said machinery constituting said ice plant; that the contract thereby became executed, and that plaintiff was not, therefore, legally entitled to have said contract rescinded. (b) That the failure and refusal of the court to charge the jury as thus requested, or to submit in any way to the jury the principles embodied in said requests, whether considered together or separately, had the effect of withdrawing from the jury its defense that plaintiff's suit based upon a rescission of the contract would not lie under the pleadings and evidence in this case, and that the plaintiff was not entitled to the relief prayed for in his declaration. (c) That under the pleadings and evidence in the case said requested charges, and each of them separately, were warranted and required in order to properly and legally submit the defenses shown by the pleadings and the evidence in the case, and the failure to give said requested charges, and each of

them separately, amounted to and was a denial of defendant's legal rights to contend and assert that plaintiff's action based upon a rescission of the contract was an improper remedy, and could not be maintained under the pleadings and evidence.

"In connection with and in support of the foregoing movant shows that plaintiff's case, as made by his declaration in attachment, is based upon an alleged right to rescind the contract, and to recover for the balance of the purchase-price. In its answer the defendant set up, as one of its defenses, that it had erected the ice plant in accordance with the terms of said contract, and that the same had been accepted by the plaintiff. The contract sued upon, and introduced in evidence, contains a provision as follows: 'If, after the plant is erected and started into operation, it comes up to the contract, in performance and otherwise, you shall then accept the same as a fulfillment of this contract, and make payments for same in the manner hereinafter specified. If you fail to notify us, in writing, within thirty days after the plant is erected and started into operation, that the same does not perform according to contract, specifying in what particular it fails to do so, this shall in itself be construed as a final acceptance of the plant.' The defendant introduced in evidence a letter addressed to it and signed by the plaintiff, dated June 15th, 1928, in which, among other things, he says: 'This date I have accepted my plant which was installed by your Mr. Chable. The plant was tested both by air pressure and vacuum, and we had no leaks, and it seems to perform nicely so far. I am well pleased with my plant as a whole, the manner in which it was installed, and the assistance you have given me during the installation. Mr. Chable has taken great pains to install my plant as neat as possible; also made several changes which will be a great benefit to me in the future. He has also given me instruction on operation and care of the plant; also changed my compressor oil,' etc. Three witnesses testified that they saw the plaintiff sign this letter after he had read the same over. The plaintiff, in an equivocal and uncertain way, undertook to deny that he had ever signed such a letter, but would neither admit nor deny that the signature to the letter was his signature when the same was presented to him. In his pleadings the plaintiff did not allege or base his case upon either total or partial failure of consideration; and even if there had been any such pleadings, there was no evi-

dence showing or tending to show any value of the plant, or that it was worthless; and the court, in his charge, specifically instructed the jury that under the pleadings and the evidence in the case they must find in favor of the plaintiff for the full amount sued for and that the notes be canceled, or that they must find in favor of the defendant for the full amount of the unpaid notes as sued for in the answer and cross-action, thereby in effect eliminating any and all questions except whether or not the plaintiff was entitled to rescind the contract and recover on the basis of such a rescission. Movant insists that the evidence really demanded a finding that the plaintiff had accepted the plant as a fulfillment of the contract; but in any event, under the evidence, the court should have submitted to the jury the question as to whether or not the plaintiff had signed this letter accepting the plant, and, if they found that he did sign that letter, that it amounted to an acceptance of the plant, that by such an acceptance the contract would become executed, and that he could not maintain an action based upon a rescission of the contract, and, that being the nature of his suit, that they must necessarily find for the defendant. In this connection, defendant shows that under the law of this State, as provided in section 4136 of the Civil Code, a breach of warranty, express or implied, does not annul the sale if executed, but merely gives the purchaser a right to damages, or an abatement of the purchase-money. Movant insists that the question as to whether or not the contract had become an executed one depended solely upon a finding as to whether or not the plaintiff signed the letter accepting the plant, and, if the jury so found, that the contract thereby became executed, and under the law of this State the contract should not be annuled or rescinded, and, plaintiff's suit being based solely upon an alleged right to annul or rescind the contract, that the plaintiff could not recover, and the verdict of the jury must necessarily have been for the defendant in accordance with the prayers of its answer and cross action.

"In elaboration of the general grounds of the motion for new trial, movant insists that it should be granted a new trial; that said verdict is contrary to law and contrary to the evidence, and is not supported by the evidence, for the reasons: (a) That plaintiff's case, as made by the petition and prayers thereof, is for a rescission of the contract and recovery of the amount paid thereon,

and cancellation of the purchase-money notes, and there is no evidence showing or tending to show that the plaintiff had offered to restore the defendant to the condition it was in before the contract was made, or that this could be done, and under these circumstances a verdict finding in favor of such a rescission of the contract is contrary to law and contrary to the evidence. (b) That the evidence fails to show that the plaintiff had properly and continuously operated the freezing system, and fails to show that the machinery was not capable, under test, of doing refrigerating work equal to the melting of 2.25 tons of ice per day of 24 hours, when operating with one hundred and eighty-five pounds discharge and twenty pounds suction pressure, and when continuously operated in accordance with defendant's instructions, all as provided in the contract, the material portion thereof being as follows, to wit: 'We guarantee that the above freezing system will have a capacity to freeze 2.25 tons of ice per day of 24 hours, when properly and continuously operated, in accordance with our instructions. We guarantee that the machinery herein specified shall be capable, under test, of doing refrigerating work equal to the melting of 2.25 tons of ice per day of 24 hours, when operating with 185 lbs. discharge and 20 pounds suction pressure and when continuously operated in accordance with our instructions.' (c) That under the evidence in the case, if the machinery was deficient in any way, or failed to produce the amount of ice specified in the contract, it was in the circulation and agitation of the brine, which is controlled by the pump; that the defendant offered to and did ship to the plaintiff a larger pump for the purpose of remedying this alleged trouble, but the plaintiff refused to accept, apply, or use the same, and refused to allow defendant to apply the same or make a test of the machinery with said new pump, in order to prove to plaintiff that it would produce the required quantity of ice; all of which was contrary to the spirit, intent, and meaning of the contract, and particularly that portion thereof where it is provided: 'If any part prove defective, our liability shall be limited to repairing such defect, or replacing such part free of charge.' (d) That the evidence is overwhelming, if not conclusive, that the plaintiff accepted the machinery and equipment as full compliance with the contract; that the contract thereby became an executed one; and that plaintiff's remedy, if any, would not be for a rescission of the contract,

or a recovery of the amount paid thereon and a cancellation of the purchase-money notes. (e) That the case was tried and presented to the jury, especially by the charge of the court, upon an erroneous theory, and did not present the full defenses of the defendant, especially the defense that under the pleadings and evidence rescission of the contract could not legally be had; for that in said charge of the court, while the issue was presented as to whether the defendant had complied with its guarantee, the court wholly failed and refused to submit the question as to whether or not the plaintiff had accepted the machinery and equipment as a compliance with the contract, and to instruct them that if same had been accepted that the contract would thereby become executed, and that under the evidence there could be no rescission of the contract, though defendant's counsel requested the court to so charge, in writing, as hereinbefore more fully set out."

This court is of the opinion that the refusal to give this charge was not error. It is true that under the Code, § 4136, a breach of warranty, express or implied, does not annul the sale if executed, but gives the purchaser a right to damages, and it may be pleaded in abatement of the purchase-money. If the sale be executory, it is a good reason for the purchaser to refuse to accept the goods. And it has been held in cases decided by this court that a breach of warranty does not annul an executed sale, but gives a right to damages, where the contract price has been fully paid; or he may plead an abatement of the purchase-money when sued therefor. *Pound* v. *Williams,* 119 *Ga.* 904 (47 S. E. 218). In *Colt Co.* v. *Mallory,* 35 *Ga. App.* 289 (133 S. E. 55), it was said: "The breach of an express warranty in an executed contract of sale does not relieve the purchaser thereunder, but gives him a right to damages. In *Harden* v. *Lang,* 110 *Ga.* 392 (36 S. E. 100), this court said: "When two parties enter into a contract for different articles of machinery which all together constitute an outfit for ginning cotton, for a gross price, the contract is an entire one, and a breach of it is caused by a failure to deliver any separate article of the machinery named. When a breach is so occasioned, the purchaser has a right to rescind the contract on notification and return of the articles which he has received, or he may, at his pleasure, abide by the contract and have a right of action to recover damages for the breach; but he can not do both." In *Case Threshing Machine*

*Co.* v. *Cook,* 7 *Ga. App.* 631 (67 S. E. 890), it was said: "Where a purchaser of a steam-engine has subjected it to trial and has ascertained all that the test can disclose as to the ability of the engine to satisfy the express warranty under which it was bought, if it does not satisfy the warranty he can reject it altogether and rescind the sale." And other decisions rendered by this court and the Court of Appeals of this State might be cited or quoted from. But in *Armsby Co.* v. *Shewmake,* 113 *Ga.* 1086 (39 S. E. 433), it was said: "When under a contract of sale the articles which are the subject-matter of the sale are to be of a given quality, the actual receipt by the purchaser of the articles will not preclude him from refusing to accept them on the ground that they are not of the quality stipulated for in the contract, when an inspection and examination of such articles, as well as a refusal to accept the same, accompanied by a tender of the articles, is made within a reasonable time after they are received. See Benj. Sales (Bennett's 7th Am. ed.), §§ 139, 701, 703; Clark, Con. 142; Diversy *v.* Kellogg, 44 Ill. 114, s. c. 92 Am. Dec. 154." See also *Aripeka Mills* v. *Supply Co.,* 143 *Ga.* 210 (84 S. E. 455). We do not think that the mere writing of the letters referred to in the last ground of the motion for a new trial and set forth above shows that the contract in this case was an executed one. There was at all times something else to be done to make the plant installed by the defendant company fulfill the guaranty; that is, the jury were authorized to find that this was true under the evidence. And it would have been error for the court to charge the jury that if they should find that Mr. Griffith, the plaintiff, signed the letter referred to "accepting the plant," then they need go no further than the pleadings and evidence in this case, but should find for the defendant in the amount claimed on the notes. Nor should the court have instructed the jury that if they should find that Griffith did sign the letter referred to, the effect thereof would be an "acceptance of the ice plant, and the contract would be an executed one, and under the law he could not maintain an action to rescind the contract." Conceding that Griffith did sign the letter referred to, the subsequent conduct of the parties shows that the contract was not by either one of them considered as finally executed. For months after the letter first referred to in this ground of the motion, the defendant was still sending agents and employees to remedy defects in the plant,

to make it fulfill the express terms of the guarantees in the contract. And if the plant installed did not come up to the guarantees contained in the contract, and was not put in a condition to meet those guarantees, then the plaintiff was not limited to the mere remedy of pleading partial or total failure of consideration. It might be that if he had purchased goods of a certain description under a contract and had paid a part of the purchase-money and given his notes for the remainder, the contract might be an executed one, and that the purchaser of the goods would be remitted to the remedy of suing for damages, and not for a rescission. But, considering the character of the present contract, we do not think this principle is applicable. The contract in the present case was for the purchase and sale and installation of an ice plant, and the plaintiff was entitled to have an ice plant that would meet the requirements of the contract. He can not be held down to the remedy of accepting what would be, to him, a worthless ice plant and permitting it to remain upon the site that he had selected for its erection. A useless, or partially useless, ice plant there might be a mere obstruction to property, and he had the right to rescind this contract, so that the defendant might remove the useless plant that was there, if it was useless, which was a question for the jury to decide, and leave the plaintiff in possession of his site for an ice plant, that he might be able to carry on the business which he purposed to carry on.

In view of what we have said, the judgment must be

*Affirmed. All the Justices concur.*